IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DARRYL E. BRIGGS**  **PLAINTIFF**
ADC #087649

v.   No: 4:17-cv-00587 PSH

**ALLEN, Sergeant, Pulaski County
Regional Detention Facility**   **DEFENDANT**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Darryl E. Briggs, an inmate in the custody of the Arkansas Department of Correction ("ADC"), filed this *pro se* civil rights complaint against Sergeant Charles Allen in both his individual and official capacities. *See* Doc. No. 2. Briggs alleges that Allen used excessive force against him during an incident that occurred on June 29, 2017, at the Pulaski County Regional Detention Facility ("PCRDF"). *Id.* at 4. Briggs alleges he suffered injuries to his shoulder, hip, back, and knee. *Id.* Briggs seeks compensatory damages and for Allen to be penalized and fired. *Id.* at 5.

Before the Court are Allen's motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 28-30). Briggs filed a response (Doc. No. 32), Allen filed a reply (Doc. No. 33), and Briggs filed another response (Doc. No. 34). Allen's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Allen is entitled to judgment as a matter of law.

### II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The undisputed facts listed below were submitted by Allen and are supported by the following documents attached to Allen's statement of undisputed facts: Affidavit of Lesa Warner; Plea Statement, Speed Letter, PCRDF Book-in Sheet; Kerzel Williams Incident Report; June 30,

2017 PCRDF Official Memorandum Cover Letter; June 29, 2017 Charles Allen Incident Report; June 29, 2017 David Carasquillo Incident Report; and June 30, 2017 PCRDF Official Memorandum regarding use of force on inmate Briggs (Doc. No. 29-1). Facts disputed by Briggs are noted. Briggs has not challenged the admissibility of the supporting documents.

1. On June 20, 2017, Briggs pleaded guilty to kidnapping, possession of firearms, and aggravated assault, and was sentenced to 10 years in the Arkansas Department of Correction. *See* Affidavit of Lesa Warner ("Warner Affidavit"), ¶ 5 (Doc. No. 29-1 at 1-2); June 20, 2017 Plea Statement (Doc. No. 29-1 at 4); June 20, 2017 Speed Letter (Doc. No. 29-1 at 5).

2. Briggs was booked into the PCRDF on June 20, 2017, as a "Hold for Penitentiary." *See* Warner Affidavit, ¶ 6 (Doc. No. 29-1 at 2); June 20, 2017 PCRDF Book-In Sheet (Doc. No. 29-1 at 6).

3. Briggs was a convicted inmate at all times relevant to his Complaint. Werner Affidavit ¶ 7 (Doc. No. 29-1 at 2); June 20, 2017 Speed Letter (Doc. No. 29-1 at 5).

4. On June 29, 2017, Deputy Kerzel Williams heard an inmate in the S Unit ask another inmate, "How did you get that gun in here?" June 29, 2017 Kerzel Williams Incident Report ("Williams Report") (Doc. No. 29-1 at 10); Warner Affidavit, ¶ 8 (Doc. No. 29-1 at 2).

5. Williams reported what he heard to Sergeant Denise Atwood and Lieutenant Lashunda Calvin. Williams Report (Doc. No. 29-1 at 10); Warner Affidavit, ¶ 8 (Doc. No. 29-1 at 2).

6. The Special Emergency Response Team ("SERT") was activated in the S-Unit of the PCRDF due to the report of a possible firearm in the unit. June 30, 2017 PCRDF Official Memorandum Cover Letter (Doc. No. 29-1 at 12); Warner Affidavit, ¶ 9 (Doc. No. 29-1 at 2).

7. Due to the severity of the threat, the SERT flex-cuffed all of the inmates in S Unit and transported them to the outside activity area. *Id.*

8. Once outside, the inmates, including Briggs, were told to sit on the ground and wait quietly until the unit was searched. *Id.*

9. Allen arrived at S Unit after the inmates were restrained and seated in the outside activity area. June 29, 2017 Charles Allen Incident Report ("Allen Report") (Doc. No. 29-1 at 13); Warner Affidavit, ¶ 10 (Doc. No. 29-1 at 2).

10. Some inmates caused a disturbance by talking loudly. Allen gave the inmates specific instructions not to talk, but they continued. June 29, 2017 David Carasquillo Incident Report ("Carasquillo Report") (Doc. No. 29-1 at 14); Warner Affidavit, ¶ 11 (Doc. No. 29-1 at 2).

11. Briggs was told a second time to be quiet, but Briggs continued to talk and laugh. Allen Report (Doc. No. 29-1 at 13). Briggs disputes that he was talking. Doc. No. 34 at 2.

12. Allen approached Briggs and grabbed him by the front of his shirt and told him to lie on his stomach. Allen Report (Doc. No. 29-1 at 13).

13. Briggs attempted to stand up, so Allen used his body weight to pull Briggs to the ground into a prone position. *Id*.

14. Allen instructed the other deputies to place the inmates in a prone position. *Id.*

15. After Allen placed Briggs in a prone position, the other inmates were quiet until the search of the unit was completed. June 30, 2017 PCRDF Official Memorandum Cover Letter (Doc. No. 29-1 at 12).

16. Once all of the inmates were outside, SERT searched all of the cells in S Unit and strip-searched each inmate. *Id.*

17. After the unit was cleared, Briggs complained of an abrasion to his left knee. *See* June 30, 2017 PCRDF Official Memorandum (Doc. No. 29-1 at 15).

18. Medical staff attempted to take his vitals but Briggs refused. *Id.* Briggs disputes that he refused medical treatment. Doc. No. 32 at 2.

19. Medical staff visually assessed Briggs and cleared him to remain in the facility. June 30, 2017 PCRDF Official Memorandum (Doc. No. 29-1 at 15).

20. No video is available from the use of force incident because there are no cameras in the outside activity area of S Unit. *Id.*

21. Lieutenant Jackson Bennett reviewed the reports from the use of force incident and found no violations of policy, procedure, practice, or directives. *Id.* He found no reason for further investigation. *Id.*

### IV. Analysis

**A.   Official Capacity Claims**

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the defendant county employee can only be held liable in his official capacity in this case if Briggs can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Briggs describes an isolated incident and does not assert that a custom or policy of Pulaski County was the moving force behind the claimed violations of his

constitutional rights. Accordingly, Allen is entitled to summary judgment on Briggs' official capacity claims.

### B. Qualified Immunity

Allen argues he is entitled to qualified immunity with respect to Briggs' individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that, in an excessive force case, there must be "a reliable inference of wantonness," and

not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives"). Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate. *Jones v. Shields*, 207 F.3d at 495. Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322).

      The alarming circumstances leading to the use of force by Allen were not ordinary. An officer overheard an inmate asking another how he got a gun in the facility. An inmate in possession of a gun obviously poses a serious threat of injury or death to staff and other inmates. The SERT team was immediately called in to search the unit. Inmates in the S Unit were flex cuffed and removed from the unit to an outdoor space so that the unit search could take place. Allen reasonably believed that the circumstances required the officers to maintain control of the inmates and to demand that they be quiet so that disturbances could be avoided while the search was underway.

      Evidence in the record indicates that Briggs was laughing and talking loudly, causing a disturbance. Briggs and other inmates deny this. Briggs does not deny, however, that inmates on either side of him were causing a disturbance. He does not dispute that inmates, including those seated next to him, were told by Allen two times to be quiet. He does not dispute that inmates continued to cause a disturbance even after warnings were given.

      Allen admits he grabbed Briggs by the front of his shirt and used his weight to force Briggs into a prone position. Doc. No. 29-1 at 13. All other inmates were then placed in a prone position,

and there were no other disturbances while the unit search was performed. Briggs complained of an abrasion to his knee as a result of Allen's actions. He was evaluated and cleared to remain in the facility. Briggs claims more significant injuries caused by Allen, injuries to his shoulder, hip, back, and knee. No medical records were submitted indicating that Briggs requested or received additional treatment, and Briggs does not claim that he sought additional treatment after these events.

Viewing the evidence in the light most favorable to Briggs, the Court finds that there is no genuine issue as to any material fact, and Allen is therefore entitled to judgment as a matter of law. The undisputed facts do not support a finding that Allen violated Brigg's constitutional right not to be subjected to excessive force, and Allen is entitled to qualified immunity. As described earlier, the core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. To find an Eighth Amendment violation, the facts must support "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives." Even accepting Briggs' version as true, there is insufficient evidence to support an inference that Allen used force with a malicious or sadistic intent to cause him harm. The undisputed evidence shows that Allen was attempting to maintain discipline and order in extraordinary circumstances, circumstances that could result in injury or death.

Even if Allen was mistaken about whether Briggs was causing the disturbance, his actions did not violate the constitution. There is no evidence that Allen did not believe Briggs was the inmate continuing to cause a disturbance after being told two times to be quiet. There is no evidence that Allen had a negative history with Briggs or had any motive to injure him. Allen had valid reasons for the use of force after having given two warnings. He used sufficient force to

place Briggs in a prone position, and stopped.  He saw to it that Briggs was checked out medically.  Briggs did not require treatment in the infirmary or transport to a hospital for treatment.  There is no evidence that he needed ongoing medical treatment after being checked out.  These facts support that the amount of force used did not cause significant injury, and also support a finding that Allen did not act maliciously or sadistically.  The Court finds as a matter of law that the force applied by Allen was applied in a good faith effort to maintain discipline and order, and that the undisputed facts do not support a "reliable inference of wantonness," or a finding that Allen acted maliciously and sadistically to cause harm.  For these reasons, the undersigned finds that Allen did not use excessive force on Briggs, and Allen is awarded summary judgment on this claim.

### IV.  Conclusion

Allen's motion for summary judgment is granted.  Briggs' official capacity claims against Allen are dismissed without prejudice for failure to state an actionable claim.  Because Allen is entitled to qualified immunity on Briggs' individual capacity excessive force claim, that claim is dismissed with prejudice.

DATED this 11th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE